**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

JOHN WILLIAMS,            )
                          )
    Plaintiff,            )
                          )
    v.                    )   Case No. 04-1387
                          )
EXCEL FOUNDRY & MACHINE, INC. )
                          )
    Defendant.            )

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment [Doc. # 11], Plaintiff's Response [Doc. # 16], and Defendant's Reply [Doc. # 18]. For the reasons that follow Defendant's motion will be granted.

### I. Background

Defendant Excel Foundry & Machine, Inc., ("Excel") is engaged in the production and machining of parts utilized to manufacture rock crushing equipment. On November 13, 2001, Excel hired Plaintiff John Williams ("Williams"). Williams worked at various entry level jobs at Excel's Pekin, Illinois plant.

On October 26, 2002, Williams fell out of a tree stand while deer hunting. As a result of the injuries he received from his fall, Williams was off work for approximately two and one-half to three months. Williams' physician, Dr. Guisseppe Lanzino permitted Williams to return to "light duty" work on January 6, 2003. Excel attempts to find "light duty" work for employees unable to perform their regularly assigned job due to illness or injury pending their return to their regular position of employment in order to contain the costs associated with paying employees who are otherwise unable

to work.  Williams' initial light duty assignment was picking up litter around the plant.  He was subsequently assigned to clean cobwebs from various walls within the plant in preparation for painting them.  Williams was then moved to the warehouse where he helped uncrate imported parts, cleaned them, painted them, and stenciled them with a part number.  The warehouse job involved tasks which exceeded Williams' physical abilities and another employee was assigned to perform those tasks which Williams could not perform because of his physical limitations.  Prior to Williams' assignment to the warehouse, the Company employed temporary employees from a manpower service to do the work assigned to Williams.

During the time Williams was performing light duty work, his various physicians provided Excel with periodic written updates concerning his physical condition.  On February 8, 2003, Dr. Lanzino wrote that Williams should "cont. to work light duty for at least one month. Then progress, gradually to full duty."  On February 19, 2003, Williams submitted a request for medical treatment to the Institute of Physical Medicine and Rehabilitation ("IPMR") stating that "I am seeking medical attention today for confirmation that I am unable to perform at full capacity."  On February 19, 2003, Dr. Sureka at IPMR issued Williams a release to return to work with the following restrictions: "To do light duty work with restrictions to avoid lifting objects heavier than 20 lbs. & to avoid frequent bending and stooping."  Dr. Eureka issued another release on March 31, 2003 containing substantially the same restrictions as contained in his February 19 release.  On April 23,

2

2003, Dr. Eureka issued Williams a release containing a single restriction: "to avoid lifting objects heavier than 50 lbs." Similarly, on June 25, 2003, Dr. Eureka issued Williams a release containing the fifty pound weight limitation but no other work restriction.  Williams' final release, issued by Dr. Eureka on September 10, 2003, contained the fifty pound lifting limitation but no other restriction on his ability to work.  These restrictions were the only ones received by Excel.

On January 30, 2004, Excel terminated Williams' employment for allegedly starting a rumor in the plant that the Company had discharged another employee who was recovering from a work related injury.  On November 8, 2004, Williams filed the instant action claiming Excel discharged him in violation of the Americans with Disabilities Act ("ADA").  This Order follows.

## II. Legal Standard

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Chelates Corp. v. Citrate, 477 U.S. 317, 323 (1986).  The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  Any doubt as to the existence of a genuine issue for trial is

resolved against the moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Cain v. Lane</u>, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets it burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  <u>Chelates</u>, 477 U.S. at 324.  Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]."  <u>Holland v. Jefferson Nat. Life Ins. Co.</u>, 883 F.2d 1307, 1312 (7th Cir. 1989).  Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Hedberg v. Indiana Bell Tel. Co.</u>, 47 F.3d 928, 931 (7th Cir. 1995).

**III.  Analysis**

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 12112; <u>Weigel v. Target Stores</u>, 122 F.3d 461, 463-64 (7th Cir. 1997).  A "qualified individual" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. §12111 (8); <u>See</u> <u>Bombard v. Fort Wayne Newspapers, Inc.</u>, 92 F.3d 560, 563 (7th Cir. 1996).  "Whether someone meets the

4

definition of a 'qualified individual with a disability' involves a two step determination." Bombard, 92 F.3d at 563. First, the fact finder must determine whether the person "satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, license, etc." Id. If this is satisfied then the fact finder must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. "The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision." Id.

A person is "disabled" under the ADA if he has (1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) is regarded as having such an impairment. See 42 U.S.C. § 12102(2). "Major life activities" are defined as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(h)(2)(i). "The term 'substantially limits' means that the individual is either unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can perform, a major life activity as compared to an average person in the general population." Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 506 (7th Cir. 1998). Factors to be considered in assessing the degree of limitation in these activities are: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term

impact or expected permanent or long term impact of or resulting from the impairment.  See  29 C.F.R. § 1630.2(j)(2).

The Court finds that no reasonable jury could find that Williams was a disabled individual as that term is defined by the ADA.  Plaintiff acknowledges that his fifty-pound lifting restriction is not a disability itself, but argues that he is also limited in his ability to sit and stand.  In particular, he argues that he can stand for only an hour before he needs to take a short break.  Even assuming the truth of this assertion, the Court finds this is not a substantial limitation as compared to the average person's ability to stand.[1]  See Dupre v. Charter Behavioral Health Systems of LaFayette, Inc., 242 F.3d 610, 614 (5th Cir. 2001) (employee's inability to sit or stand in one place for more than one hour because of a back condition was not a substantial limitation in the major life activities of standing and sitting, for purpose of establishing a "disability" within meaning of the ADA); Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 186 (3rd Cir. 1999) (upholding summary judgment against an employee who required hourly breaks while sitting or walking because the employee's

---

[1]The Court notes that it has not considered Williams' social security application statements in reaching this result. Moreover, the Court finds the statements in the application are immaterial at this point in time considering there is no indication Williams received any social security benefits, and, not surprisingly, Williams is not asserting that the statements in his application materials are accurate.  The Court recognizes that Williams performed his light duty job at Excel for over a year after his alleged disability onset, but if one assumes Williams' representations to the SSA are true, it would seem impossible for him to have done so.  In conclusion, as long as no benefits resulted from the representations Williams made to the SSA, Williams is not judicially estopped by his prior representations.

ability to stand and walk was not significantly less than that of an average person).

Consequently, the Court finds, viewing the record and all inferences drawn from it in the light most favorable to Williams, that Excel is entitled to summary judgment.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. # 11] is GRANTED.

CASE TERMINATED.

Entered this   27th   day of February, 2006.

                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                          United States District Judge